1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MARK WHEELER, *individually and on*            No.  1:22-cv-00459-NODJ-BAM
     *behalf of all others similarly situated*,
12
                        Plaintiff,
13                                                  ORDER GRANTING DEFENDANT'S
          v.                                        MOTION TO COMPEL ARBITRATION AND
14                                                  DENYING AS MOOT DEFENDANT'S
     LG ELECTRONICS USA, INC.,                      MOTION TO TRANSFER VENUE, OR IN
15                                                  THE ALTERNATIVE, TO DISMISS
                        Defendant.
16                                                  (Doc. Nos. 18, 19, 30)

17

18

19          This matter is before the court on (1) the motion to transfer venue, or in the alternative, to

20   dismiss, and (2) the motion to compel arbitration filed by defendant LG Electronics USA, Inc.,

21   ("LG") on August 5, 2022, and February 23, 2023, respectively.  (Doc. Nos. 18, 30.)  In light of

22   the public health emergency posed by the COVID-19 pandemic, defendant's motion to transfer

23   venue was taken under submission by the then-assigned district judge on the papers on August 8,

24   2022.  (Doc. No. 20.)  Defendant's motion to compel arbitration was likewise taken under

25   submission on the papers on February 27, 2023.  (Doc. No. 31.)  For the following reasons, the

26   court will grant defendant's motion to compel arbitration and deny as moot the motion to transfer

27   venue or dismiss.

28   /////

                                                    1

1

**BACKGROUND**

2

    **A.**    **Factual Background**

3

       Plaintiff Mark Wheeler filed a complaint initiating this putative class action on April 19,

4

2022, involving several models of defendant LG's dishwashers.[1]  (Doc. No. 1.)  Therein, plaintiff

5

alleges the following.  Defendant LG knowingly sold dishwashers equipped with defective LED

6

control panels.  (*Id.* at ¶ 4.)  Specifically, according to plaintiff, the defect "allows moisture to

7

penetrate the Control Panels, damaging the sensitive electronic components housed therein."  (*Id.*)

8

The defect can make the control panels unresponsive, causing dishwashers to stop during a cycle

9

or fail to restart, which ultimately prevents consumers from using their dishwashers as expected

10

and intended.  (*Id.*)  Defendant knew or had reason to know of the defect since 2015 based on

11

consumer complaints.  (*Id.* at ¶ 5); *see also id.* at 22 (providing a product review dated April 12,

12

2015, concerning, among other things, the replacement of a control panel).  Defendant

13

acknowledged the defect on November 8, 2018, in a service bulletin made available only to its

14

authorized repair technicians but "failed to disclose and actively concealed this material fact from

15

Plaintiffs and the Class."  (*Id.* at ¶¶ 5, 6.)

16

       Plaintiff's allegations, as they relate to himself, are as follows.  Plaintiff, a California

17

resident, purchased an LG dishwasher, model number LDT5678SS, from a Lowes Store in

18

Bakersfield, California on November 29, 2019.  (*Id.* at ¶¶ 13, 14.)  Prior to purchase, plaintiff

19

researched and reviewed several dishwashers on defendant's website which were advertised as

20

energy efficient and helpful in the reduction of water consumption.  (*Id.* at ¶ 15.)  However,

21

neither defendant nor any of its representatives informed plaintiff of the dishwasher's control

22

panel defect.  (*Id.*)  Following his purchase, in July of 2020, plaintiff contacted defendant

23

regarding the defect,[2] at which point defendant provided a replacement control panel pursuant to

24

the product's warranty.  (*Id.* at ¶ 16.)  In February of 2021, plaintiff's replacement control panel

25

26

[1]  Specifically, this action involves "model numbers: LDF5545, LDP6797, LDT7797, LDT5665, LDT5678, and LDT7808." (Doc. No. 1 at ¶ 1.)

27

28

[2]  Plaintiff does not specifically allege how he first learned of the defect, though presumably, his dishwasher began malfunctioning at that time, prompting him to contact defendant.

began malfunctioning by powering on and off during cycles.  (*Id.* at ¶ 17.)  "Upon inspection, the technician concluded that the Control Panel would need to be replaced again[,]" which left plaintiff with a defective dishwasher because by that point, the warranty had expired.  (*Id.*)  Plaintiff does not allege that he contacted defendant a second time to replace the defective control panel after the warranty had expired.

Plaintiff further alleges that defendant continues to provide consumers with replacement control panels which suffer from the same moisture-penetration defect.  (*Id.* at ¶¶ 8, 9.)  Defendant's warranty allegedly "fails of its essential purpose[]" because "once LG's one-year 'labor and parts' warranty expires, LG claims the Defect does not exist, declines to provide further warranty coverage, and requires consumers who have not purchased an extended warranty to pay out of pocket to (temporarily) return their Class Dishwashers to proper working order[.]"  (*Id.* at ¶ 9.)  Thus, plaintiff contends that defendant's actions leave impacted consumers with the unsatisfactory choice between purchasing a new defect-free dishwasher or paying for multiple repairs on their defective dishwasher model.  (*See id.* at ¶ 11.)

The warranty covering plaintiff's particular dishwasher model contains an arbitration provision stating:

> **ARBITRATION NOTICE:**  THIS LIMITED WARRANTY CONTAINS AN ARBITRATION PROVISION THAT REQUIRES YOU AND LG TO RESOLVE DISPUTES BY BINDING ARBITRATION INSTEAD OF IN COURT, UNLESS YOU CHOOSE TO OPT OUT.  IN ARBITRATION, CLASS ACTIONS AND JURY TRIALS ARE NOT PERMITTED.  PLEASE SEE THE SECTION TITLED "PROCEDURE FOR RESOLVING DISPUTES" BELOW.

(Doc. No. 30-3 at 57.)  This provision appears in an owner's manual which has been packaged with all LG dishwashers since at least March 2018.  (Doc. No. 30-2 at ¶ 4.)  Specifically, the above provision appears on the fifty-sixth page of the owner's manual, and the relevant excerpts quoted in this order are from the version of the owner's manual that was revised on July 30, 2019, and effective when plaintiff purchased his dishwasher in November 2019.  (*Id.* at ¶¶ 7–16.)

In a paragraph defining terms, the owner's manual provides that references to the term "dispute" include "any dispute, claim or controversy of any kind whatsoever (whether based in

1  contract, tort, statute, regulation, ordinance, fraud, misrepresentation or any other legal or

2  equitable theory) arising out of or relating in any way to the sale, condition or performance of the

3  product or this Limited Warranty." (Doc. 30-3 at 59.)  Regarding governing law, the owner's

4  manual states that "[t]he law of the state of your residence shall govern this Limited Warranty and

5  any disputes between us except to the extent that such law is preempted by or inconsistent with

6  applicable federal law." (*Id.*)  The owner's manual also sets forth the process for opting out of

7  arbitration:

8      **Opt Out.** You may opt out of this dispute resolution procedure. If
       you opt out, neither you nor LG can require the other to participate
9      in an arbitration proceeding. To opt out, you must send notice to LG
       no later than 30 calendar days from the date of the first consumer
10     purchase of the product by either: (i) sending an e-mail
       to optout@lge.com, with the subject line: "Arbitration Opt Out" or
11     (ii) calling 1-800-980-2973.

12  (*Id.* at 60.)  Later, the same section provides that opting out will not affect the warranty's

13  coverage and that "[i]f you keep this product and do not opt out, then you accept all terms and

14  conditions of the arbitration provision described above." (*Id.*)

15      In addition to the arbitration provision contained within the owner's manual, all LG

16  dishwashers have featured an arbitration notice both on the inside and outside of the product's

17  packaging since at least March 2018 containing the following language:

18      By using this product, you agree that all disputes between you and
       LG arising out of or relating in any way to this product (including
19     but not limited to warranty disputes) shall be resolved exclusively
       through binding arbitration on an individual basis. The terms of the
20     arbitration agreement (including details on the procedure for
       resolving disputes) is available at www.lg.com/us/arbitration (USA)
21     or  www.lg.com/ca_en/arbitration (Canada) and/or your owner's
       manual or warranty.
22

23  (*See* Doc. No. 30-2 at ¶¶ 18–23.)

24      Plaintiff's proposed class definitions are as follows: "Nationwide Class:  All persons or

25  entities in the United States who purchased one or more LG Class Dishwashers.  Or, in the

26  alternative, California Subclass:  All persons or entities in California who purchased one or more

27  LG Class Dishwashers." (Doc. No. 1 at ¶ 85.)

28  /////

4

1    Based on the allegations summarized above, plaintiff asserts several causes of action on

2  behalf of himself and the putative class, including:  breach of express warranty (Count I); breach

3  of implied warranty of merchantability (Count II); breach of written warranty under the

4  Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.* (Count III); violation of the Consumer

5  Legal Remedies Act ("CLRA"), California Civil Code §§ 1750, *et seq.* (Count IV); violation of

6  the False Advertising Law ("FAL"), California Business & Professions Code §§ 17500, *et seq.*

7  (Count V); violation of the Unfair Competition Law ("UCL"), California Business & Professions

8  Code §§ 17200, *et seq.* (Counts VI, VII, and VIII); common law fraud (Count IX); and unjust

9  enrichment (Count X).  (Doc. No. 1.)

10    **B.    Procedural Background**

11    As noted, plaintiff filed the complaint initiating this action on April 19, 2022.  (Doc. No.

12  1.)  Defendant was served with the summons on June 10, 2022.  (Doc. No. 5.)  Since that time,

13  the parties have agreed to, sought, and received several extensions of time that are relevant to the

14  pending motions.  On July 1, 2022, the parties entered into a joint stipulation extending

15  defendant's time to respond to the complaint by 28 days pursuant to Local Rule 144.  (Doc. No.

16  8.)  On July 26, 2022, the parties stipulated to an additional 7-day extension of defendant's

17  deadline to respond to the complaint to August 5, 2022, which the court granted.  (Doc. Nos. 12,

18  13.)  Further, on August 2, 2022, the parties stipulated to a briefing schedule for defendant's

19  anticipated motion to dismiss, under which plaintiff would have until August 26, 2022, to file an

20  opposition and defendant would have until September 16, 2022, to file a reply.  (Doc. No. 15.)

21  The parties also requested to continue the initial scheduling conference and all related deadlines

22  until the pending motion to dismiss was decided.  (*Id.*)  On August 3, 2022, the parties' proposed

23  briefing schedule was adopted by the court, and the initial scheduling conference was reset for

24  December 14, 2022.  (Doc. No. 16.)

25  /////

26  /////

27  /////

28  /////

5

On August 5, 2022, defendant filed a motion to transfer venue, or in the alternative, to dismiss plaintiff's complaint (hereinafter "MTT&D").[3] (Doc. No. 18.) On September 15, 2022, the parties filed a joint status report pursuant to the court's August 31, 2022 minute order, in which they were directed to provide their position with regard to whether a settlement conference would be beneficial.[4] (Doc. No. 25.) On November 23, 2022, the parties once again jointly sought to continue the initial scheduling conference pending a ruling on the motion to dismiss and that request was granted. (Doc. Nos. 28, 29.)

On February 23, 2023, defendant filed the pending motion to compel arbitration. (Doc. No. 30.) This motion was filed a little less than eight-and-a-half months after the summons was served and a little more than six-and-a-half months after the MTT&D was filed. The parties again stipulated to an extended briefing schedule on the motion to compel arbitration and requested a continuance of the initial scheduling conference pending a ruling on both of

---

[3] Defendant also concurrently filed an unopposed request that the court take judicial notice of: (1) the first amended complaint filed in the U.S. District Court for the District of New Jersey in *Simner v. LG Electronics USA, Inc.*, 2:21-cv-13322-SDW-CLW (D.N.J. November 22, 2021); (2) a copy of the dishwasher owner's manual filed in the *Simner* action; and (3) a demand letter from plaintiff dated March 10, 2022. (Doc. No. 19.) A court may "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007). Here, the filings in the *Simner* action deal with the same alleged dishwasher defect at issue in this case and are either partially copied or referenced in plaintiff's complaint. (*See* Doc. No. 1 at ¶¶ 54, 55.) Accordingly, these documents have a direct relation to matters at issue here and will be judicially noticed. Next, because plaintiff's demand letter is incorporated by reference at paragraph 147 of the complaint, the court will take judicial notice of that letter as well. *See Corbett v. PharmaCare U.S., Inc.*, 567 F. Supp. 3d 1172, 1183 (S.D. Cal. 2021) (granting request for judicial notice of demand letter). Therefore, defendant's request for judicial notice (Doc. No. 19) will be granted.

[4] In their joint status report, the parties note that "LG's Motion to Transfer Venue is based, in part, on the [*Simner* action]." (Doc. No. 25 at 2.) Seemingly due to the similarities between the present action and the *Simner* action, all counsel for the parties in both actions engaged in settlement negotiations on September 7, 2022, which appear to have been unsuccessful. (*Id.* at 3.) As of the date of this order, the *Simner* action is moving forward on the plaintiff's claim of breach of express warranty, which is the "sole remaining viable claim in [that] matter." *Simner v. LG Elecs. USA, Inc.*, 2:21-cv-13322-SDW-CLW, Order, Doc. No. 45 at 1 (D.N.J. May 1, 2023).

defendant's motions.  (Doc. Nos. 32, 33.)  These requests were granted on March 3, 2023.  (Doc. Nos. 34, 35.)  The initial scheduling conference in this case is now scheduled for April 25, 2024. (Doc. Nos. 39, 40.)

Plaintiff filed an opposition to defendant's motion to compel arbitration on April 10, 2023, and defendant filed its reply on April 27, 2023.  (Doc. Nos. 36, 37.)  On May 24, 2023, defendant filed a notice of supplemental authority, providing this court with a copy of the May 1, 2023 order granting LG's motion to dismiss certain claims in the *Simner* action.  (Doc. No. 38.)

## LEGAL STANDARD[5]

The Federal Arbitration Act ("FAA") governs arbitration agreements.  9 U.S.C. § 2. "Section 2 of the statute makes arbitration agreements 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'"  *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906, 1917 (2022) (quoting 9 U.S.C. § 2).  "As we have interpreted it, this provision contains two clauses:  An enforcement mandate, which renders agreements to arbitrate enforceable as a matter of federal law, and a saving clause, which permits invalidation of arbitration clauses on grounds applicable to 'any contract.'"  *Id.* (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339–340 (2011)).

A party seeking to enforce an arbitration agreement may petition the court for "an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.  To rule on a motion to compel arbitration, a court must determine: (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.  *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1017 (9th Cir. 2016). "Arbitration is a matter of contract, and the FAA requires courts to honor parties' expectations." *Concepcion*, 563 U.S. at 351.  However, parties may use general contract defenses to invalidate an agreement to arbitrate.  *See id.* at 339.  Thus, a court should grant a motion to compel arbitration of a dispute only where it is satisfied that neither the agreement's formation nor

---

[5]  Because the court will grant defendant's motion to compel arbitration for the reasons explained below, the court need not recite the legal standards applicable to plaintiff's MTT&D, which will be denied as having been rendered moot by this order.

1    enforceability or applicability to the dispute is in issue.  *See Granite Rock Co. v. Int'l Bhd. of*

2    *Teamsters*, 561 U.S. 287, 299–300 (2010).  "Where a party contests either or both matters, 'the

3    court' must resolve the disagreement[,]" *id.*, "because a party cannot be required to submit to

4    arbitration any dispute which he has not agreed so to submit."  *Knutson v. Sirius XM Radio Inc.*,

5    771 F.3d 559, 565 (9th Cir. 2014) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav.*

6    *Co.*, 363 U.S. 574, 582 (1960)).  If a valid arbitration agreement encompassing the dispute exists,

7    arbitration is mandatory.  *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

8          Because arbitration is a creation of contract, a court may compel arbitration only when

9    there is a "clear agreement" to arbitrate between the parties.  *Davis v. Nordstrom, Inc.*, 755 F.3d

10   1089, 1092–93 (9th Cir. 2014) (citations omitted).  "In determining whether the parties have

11   agreed to arbitrate a particular dispute, federal courts apply state-law principles of contract

12   formation."  *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022) (citing

13   *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).  Under section 3 of the FAA, a

14   court, "upon being satisfied that the issue involved . . . is referable to arbitration under such an

15   agreement, shall on application of one of the parties stay the trial of the action until such

16   arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3.

17   **ANALYSIS**

18        **A.     Waiver**

19         Before considering the validity and applicability of the arbitration clause to the dispute at

20   hand, the court will first address the contested issue of waiver.  Plaintiff argues that defendant has

21   waived its right to compel arbitration because defendant knew of its right to arbitrate, delayed

22   asserting that right, and instead engaged in actions consistent with the intent to litigate the matter

23   in federal court—specifically, by filing the MTT&D.  (*See* Doc. No. 36 at 11–14.)  Defendant

24   argues that plaintiff has failed to meet his burden of establishing waiver and that filing a motion

25   to dismiss prior to a motion to compel arbitration, without more, is not enough to constitute

26   waiver of the right to compel arbitration.  (*See* Doc. No. 37 at 12–15.)  The court finds

27   defendant's argument on this point to be persuasive.

28   /////

Prior to the Supreme Court's decision in *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022), the Ninth Circuit had crafted an arbitration-specific waiver test.[6]  *See Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1014 (9th Cir. 2023).  Under that test, "parties arguing that their opponent waived the right to arbitrate bore 'the heavy burden of demonstrating:  (1) knowledge of an existing right to compel arbitration; (2) intentional acts inconsistent with that existing right; and (3) prejudice to the person opposing arbitration from such inconsistent acts.'"  *Id.* (quoting *Newirth ex rel. Newirth v. Aegis Senior Cmtys., LLC*, 931 F.3d 935, 940 (9th Cir. 2019)).  However, the Supreme Court in *Morgan* found it "wrong to condition a waiver of the right to arbitrate on a showing of prejudice[]" in light of the FAA's "policy favoring arbitration."  *Morgan*, 596 U.S. 411, 417–19 (2022).  This was particularly so, the court concluded, because that policy "make[s] 'arbitration agreements as enforceable as other contracts, but not more so.'"  *Id.* at 418 (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, n. 12 (1967)).  The court also noted that "[o]utside the arbitration context, a federal court assessing waiver does not generally ask about prejudice."  *Morgan*, 596 U.S. at 417.

In light of the Supreme Court's decision in *Morgan*, the burden on the party opposing arbitration is the same as in any other contractual context and is no longer "heavy."  *Armstrong*, 59 F.4th at 1014–15.  The party opposing arbitration and asserting waiver must now show "(1) knowledge of an existing right to compel arbitration and (2) intentional acts inconsistent with that existing right."  *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 468 (9th Cir. 2023).  The Ninth Circuit has also recognized that "the body of caselaw in this Circuit applying these two elements remains good law following *Morgan*."  *Id.* at 460.

With respect to the first element, plaintiff has sufficiently demonstrated that defendant had knowledge of an existing right to arbitrate.  Plaintiff asserts it is indisputable that defendant had knowledge because the arbitration agreement was written and published by defendant.  (Doc. No. 36 at 12.)  Defendant does not dispute this point, implicitly conceding that it was aware of its right to arbitrate pursuant to the arbitration provision in its warranty.  (*See* Doc. No. 37 at 12–14.)

---

[6]  Because neither party has provided a completely accurate legal standard for waiver in the arbitration context, the court finds it appropriate to summarize the applicable precedent here.

9

1    Concerning the second element, "[t]here is no concrete test to determine whether a party

2    has engaged in acts that are inconsistent with its right to arbitrate." *Martin v. Yasuda*, 829 F.3d

3    1118, 1125 (9th Cir. 2016).  Instead, the totality of the parties' actions should be considered.  *Hill*,

4    59 F.4th at 471.

5         We find this element satisfied when a party chooses to delay his right
          to compel arbitration by actively litigating his case to take advantage
6         of being in federal court.  *See Van Ness Townhouses v. Mar Indus.
          Corp.*, 862 [F.2d] 754, 756, 759 (9th Cir. 1988) (finding waiver when
7         party answered complaints, moved to dismiss the action, and did not
          claim a right to arbitration in any of the pleadings); *Kelly v. Pub. Util.
8         Dist. No. 2*, 552 Fed. App'x. 663, 664 (9th Cir. 2014) (finding this
          element satisfied when the parties "conducted discovery and litigated
9         motions, including a preliminary injunction and a motion to
          dismiss").  A statement by a party that it has a right to arbitration in
10        pleadings or motions is not enough to defeat a claim of waiver.  *See
          In Re Mirant Corp. v. Castex Energy, Inc.*, 613 F.3d 584, 591 (5th
11        Cir. 2010) ("A party cannot keep its right to demand arbitration in
          reserve indefinitely while it pursues a decision on the merits before
12        the district court."); *Hooper v. Advance Am., Cash Advance Ctrs. of
          Missouri, Inc.*, 589 F.3d 917, 923 (8th Cir. 2009) ("A reservation of
13        rights is not an assertion of rights.").

14   *Id.* (quoting *Martin*, 829 F.3d at 1125).

15        Here, the court concludes that defendant has not acted in a way that is inconsistent with its

16   right to arbitrate.  Plaintiff's arguments on this point largely focus on timing, noting that

17   defendant waited eight months after being served with the summons and nearly one year after

18   receiving notice of the suit (via plaintiff's demand letter) before asserting a right to arbitrate this

19   dispute.  (*See* Doc. No. 36 at 12–13.)  In the decisions cited by plaintiff in his opposition to the

20   pending motion to compel arbitration, courts have found waiver under somewhat similar

21   timeframes.  *See Augusta v. Keehn & Assocs.*, 193 Cal. App. 4th 331, 338 (2011) (six-and-a-half

22   months between filing lawsuit and motion to compel arbitration); *Guess?, Inc. v. Superior Ct.*, 79

23   Cal. App. 4th 553, 556 (2000) (four months between filing lawsuit and motion to compel

24   arbitration); *Kaneko Ford Design v. Citipark, Inc.*, 202 Cal. App. 3d 1220, 1228 (1988) (five-and-

25   a-half months between filing lawsuit and motion to compel arbitration).  However, timeliness

26   alone is not the dispositive factor.  In each of the cases cited by plaintiff there were additional

27   actions taken by the defendant that were inconsistent with the assertion of a right to arbitrate

28   which are not present in this case.

In *Augusta*, despite the arbitration clause's prohibition on discovery, the party later seeking to compel arbitration scheduled a deposition, propounded form interrogatories, and sought information relating to the merits of the case. *Augusta*, 193 Cal. App. 4th at 339–40.  In *Guess?, Inc.*, the party seeking to compel arbitration had "fully participated in the discovery process," and took full advantage of the opportunity to test the validity of the plaintiff's claims both legally and factually—all while remaining silent on the subject of arbitration. *Guess?, Inc.*, 79 Cal. App. 4th at 558.  In *Kaneko*, an answer to the complaint had been filed and the party seeking arbitration was able to obtain insight into the opponent's defenses and legal strategies based on that filing. *Kaneko*, 202 Cal. App. 3d at 1228.

In this case, the discovery phase of the litigation has not commenced.  Defendant has not filed an answer.  Instead, the parties have jointly sought continuances of the initial scheduling conference until the court rules on defendant's pending motions.  Any insights into legal strategies are limited since defendant's motion to dismiss merely challenges the sufficiency of the complaint as opposed to setting forth affirmative defenses which may later be at issue in any arbitration proceeding.

To be sure, even the decisions that were recently cited by the Ninth Circuit in *Hill* in laying out the applicable legal standard—*Van Ness Townhouses* and *Martin*, in both of which the court found that arbitration had been waived—are also distinguishable from the present case.  In *Van Ness*, a pre-trial conference order providing for a jury trial was approved by both parties and issued by the district court, and the party seeking to compel arbitration "chose instead to litigate actively the entire matter—including pleadings, motions, and approving a pre-trial conference order—and did not move to compel arbitration until more than two years after the appellants brought the action." *Van Ness*, 862 F.2d at 756, 759.  In *Martin*, the party seeking to compel arbitration devoted "considerable time and effort" to a joint stipulation structuring the litigation, entered into a protective order, answered discovery, and conducted a deposition. *Martin*, 829 F.3d at 1126 ("The defendants did not even note their right to arbitration until almost a year into the litigation . . . .  Indeed, fourteen months into the litigation, they told the district judge and opposing counsel that they were likely 'better off' in federal court.").

Despite the plain differences between *Martin* and the present case, there is one notable similarity. Namely, the Ninth Circuit in *Martin* considered the defendants' filing of a motion to dismiss on a key merits issue as "conduct inconsistent with [the] right to arbitrate." *Id.* "When defendants move for dismissal with prejudice on a key merits issue that would preclude relief as to one or more of plaintiffs' claims, as they did here, they are seeking a ruling on the merits." *Id.* at n.4. Here, in the pending MTT&D, defendant has sought a dismissal of plaintiff's complaint with prejudice.[7] (Doc. No. 18 at 2.) Although the Ninth Circuit in both *Van Ness* and *Martin* made clear that such an action is inconsistent with the assertion of the right to arbitrate, the present case lacks key commonalities of discovery and case management procedures which impedes the court reaching the simple conclusion that defendant waived its right to arbitrate by filing the MTT&D. *See Hill*, 59 F.4th at 471 n.16 (emphasizing the need to apply a holistic, rather than individualized approach to determine waiver).

Under this holistic approach, the totality of defendant's conduct in this case still raises questions. For example, defendant's unprompted request for oral argument on the MTT&D seemingly indicated a preference to litigate this matter in federal court. (Doc. No. 25 at 3.) Additionally, defendant's delay in moving to compel arbitration is also relevant to the waiver determination. Defendant has not informed the court of the particular date it became aware of its right to compel arbitration. However, because the arbitration clause here was written and published by defendant, defendant conceivably could have discovered its applicability to the instant action after receiving plaintiff's demand letter on March 12, 2022; or on June 10, 2022, after being served with the summons. At the very latest, defendant clearly should have known of

---

[7] Plaintiff raises an additional argument, citing an Eighth Circuit opinion in support of the assertion that the portion of defendant's MTT&D addressing the transfer of this case constitutes additional evidence of its intent to litigate this matter in federal court. (Doc. No. 36 at 13 n.2) (citing *Messina v. N. Cent. Distrib., Inc.*, 821 F.3d 1047, 1050 (8th Cir. 2016)). However, unlike in this case, in *Messina*, the litigation machinery was "substantially invoked" by way of a removal to federal court, the filing of an answer, participation in a pre-trial hearing, and the filing of a scheduling report which recommended the setting of a trial date and discovery deadlines. Moreover, the defendant in *Messina* moved to compel arbitration <u>after</u> receiving an unfavorable decision from the court on its motion to transfer. *Messina*, 821 F.3d at 1050–51. For these reasons, the undersigned does not find plaintiff's argument and reliance on the Eighth Circuit's decision in *Messina* to be persuasive.

its right to arbitrate on August 22, 2022, after first speaking with counsel in the related *Simner* action filed in the District of New Jersey regarding a "potential early resolution" of both actions. (*See supra* n.4; Doc. No. 25 at 3 n.1.)  Here, the aforementioned lack of case development indicates that defendant has not "actively litigat[ed its] case to take advantage of being in federal court."  *Martin*, 829 F.3d at 1125.  Considering defendant's actions taken in this case as a whole, even if defendant discovered its right to compel arbitration as early as March 12, 2022, the court is not convinced that the resulting eleven-and-a-half month interval before moving to compel arbitration amounts to "*extended* silence and delay[.]"  *Alvarez v. Sheraton Operating Corp.*, No. 22-55749, 2023 WL 2491279, at *1 (9th Cir. 2023)[8] (emphasis added) (quoting *Martin*, 829 F.3d at 1125); *see also Armstrong*, 59 F.4th at 1016 (finding no waiver where the motion to compel arbitration was made within one year after the complaint was filed).  Due to the absence of any discovery being conducted, an answer being filed, or meaningful case management proceedings being conducted in the present action, the court finds that defendant's conduct in this litigation has not been inconsistent with its pending assertion of the right to arbitrate.

Having found that defendant has not waived its right to arbitration in this dispute.  The court will now turn to address whether the arbitration agreement is valid, and if so, whether this dispute is covered by that agreement.

### B.    Validity of the Arbitration Agreement

The parties do not dispute that California law governs the issue of the validity of the arbitration agreement.  (*See* Doc. Nos. 30-1, 36.)  In its motion to compel arbitration, defendant maintains that the agreement is valid because it was conspicuous, properly supported by consideration, and that plaintiff's failure to opt out of arbitration and continued use of the dishwasher demonstrate his assent to be bound by the agreement.  (Doc. No. 30-1 at 10–20.)  In a single paragraph in the introduction section of his opposition, plaintiff summarily argues— without providing any supporting legal authority—that defendant has failed to establish that consumers would have notice of the arbitration agreement.  (Doc. No. 36 at 4–5.)  Plaintiff then

---

[8]  Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

1    sets forth two additional validity arguments.  (*Id.* at 6–11.)  First, plaintiff contends that the

2    arbitration agreement is invalid in light of the California Supreme Court's holding in *McGill v.*

3    *Citibank, N.A.*, 2 Cal. 5th 945 (2017) because it is as an improper attempt to preclude plaintiff

4    from seeking public injunctive relief, and thus violates what is referred to as "the *McGill* rule."

5    (*Id.* at 6–10.)  Second, plaintiff argues that the arbitration agreement is unconscionable and

6    therefore unenforceable.  (*Id.* at 10–11.)  The court will examine each of plaintiff's arguments in

7    this regard below.

8                            1.    Notice

9           Plaintiff's barebones argument regarding a lack of notice impliedly challenges the

10   existence of a valid arbitration agreement because without notice, consumers could not consent to

11   arbitrate their claims.  *See Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1098 (9th Cir. 2023)

12   ("The Supreme Court has emphasized the necessity of consent in the arbitration context[.]").

13   Because plaintiff's notice argument does not implicate or contest other elements of contract

14   formation, the only dispute for the court to resolve is whether defendant has established mutual

15   consent under California law.

16          "[T]he party seeking to compel arbitration . . . bears the burden of proving the existence of

17   an agreement to arbitrate by a preponderance of the evidence."  *Johnson v. Walmart Inc.*, 57 F.4th

18   677, 681 (9th Cir. 2023) (citing *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir.

19   2014)).  Under California law, "[i]t is essential to the existence of a contract that there should be:

20   (1) [p]arties capable of contracting; (2) [t]heir consent; (3) [a] lawful object; and, (4) [a] sufficient

21   cause or consideration."  Cal. Civ. Code § 1550.  "A contract for sale of goods may be made in

22   any manner sufficient to show agreement, including conduct by both parties which recognizes the

23   existence of such a contract."  Cal. Com. Code § 2204(1).  Thus, in considering the mutual

24   consent element of contract formation, "[c]ourts must determine whether the outward

25   manifestations of consent would lead a reasonable person to believe the offeree has assented to

26   the agreement."  *Knutson*, 771 F.3d at 565 (citing *Meyer v. Benko*, 55 Cal. App. 3d 937, 942–43

27   (1976)).

28   /////

                                        14

Generally, silence does not constitute acceptance of an offer.  *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1284 (9th Cir. 2017) (citing *Golden Eagle Ins. Co. v. Foremost Ins. Co.*, 20 Cal. App. 4th 1372, 1385 (1993)).  However, "an offeree, knowing that an offer has been made to him but not knowing all of its terms, may be held to have accepted, by his conduct, whatever terms the offer contains."  *In re Holl*, 925 F.3d 1076, 1083 (9th Cir. 2019) (citing *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 992 (1972)).

In the context of adhesive consumer contracts, "[t]here is no special rule . . . that an offeror . . . specifically highlight or otherwise bring an arbitration clause to the attention of the consumer to render the clause enforceable."  *Id.* (citing *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 914 (2015)).  Yet, "an offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious."  *Jackson*, 65 F.4th at 1099 (citing *Long v. Provide Com., Inc.*, 245 Cal. App. 4th 855, 862, (2016)).  For an arbitration provision included with the purchase of a product to be enforceable, the circumstances must be such that a reasonable person in the purchaser's position "would have known about the arbitration provision and known that using the [product] constituted acceptance of that provision."  *In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*, 298 F. Supp. 3d 1285, 1293 (N.D. Cal. 2018) (citing *Knutson*, 771 F.3d at 566).

In this case, the court finds a sufficient basis for concluding that plaintiff had notice of the arbitration agreement.  As noted above, the arbitration provision appeared on the fifty-sixth page of the owner's manual which is provided to consumers along with their dishwashers.  (Doc. No. 30-3 at 57.)  The text of the provision is capitalized and the words "arbitration notice" appear in bold typeface.  (*Id.*)  A similar arbitration notice appears both on the outside and inside of the dishwasher's packaging and provides reference to the complete arbitration provision contained within the owner's manual and on defendant's website.  (Doc. No. 30-2 at ¶¶ 20, 22.)  While the notice on the outside of the packaging is bold and the font size is small compared to surrounding text, the notice on the inside of the packaging is of similar size to surrounding text and contains a larger, capitalized "arbitration notice" heading.  (*See id.*)  Prior to using their dishwasher, a

1    reasonable purchaser would likely view the arbitration notice on the inside of the packaging

2    because it is physically taped over installation information.  (*Id.*)  Even if the purchaser never

3    followed the reference to read the complete arbitration provision appearing online or in the

4    owner's manual, they would still have notice that "[b]y using this product, you agree that all

5    disputes between you and LG arising out of or relating in any way to this product (including but

6    not limited to warranty disputes) shall be resolved exclusively through binding arbitration on an

7    individual basis."  (*Id.*)

8          The decision in *In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.* is

9    instructive on this issue.  There, notice of an arbitration provision was established from an

10   outside-the-box reference to "additional terms and conditions" coupled with language contained

11   within guidebooks on the inside of the box stating that use of the smartphones would constitute

12   acceptance of the additional terms and conditions.  298 F. Supp. 3d at 1294–97.  Notably, the

13   purchasers in *Samsung* would have seen no reference to arbitration until they flipped the cover

14   page in the guidebook.  *Id.* at 1295.  In contrast, the arbitration notices here first appear to a

15   purchaser on the outside of the dishwasher's box and—if unnoticed there—would have become

16   apparent upon opening the packaging and attempting to install the dishwasher.  Moreover, as in

17   *Samsung*, the arbitration notices accompanying the dishwasher make clear to the consumer that

18   use of the product constitutes acceptance of the arbitration agreement.  *Id.* at 1294–95 ("The

19   language '[b]y using this device, you accept' prompts consumers to read the guidebook and

20   indicates that using the device would subject the consumer to contractual terms.").  The district

21   court in *Samsung* also reasoned that the purchasers' ability to opt out of the arbitration agreement

22   without penalty, but failure to do so, further confirmed their agreement to arbitrate.  *Id.* at 1296.

23   Here, it appears that plaintiff likewise made no attempt to opt out of arbitration despite having the

24   opportunity to do so without penalty.

25         The district court's decision in *Hoekman v. Tamko Bldg. Prod., Inc.*, No. 2:14-cv-01581-

26   TLN-KJN, 2015 WL 9591471 (E.D. Cal. Aug. 26, 2015) is also instructive in resolving the issue

27   posed by the pending motion.  In *Hoekman*, purchasers of roof shingles alleged that they never

28   saw an arbitration agreement because the packaged shingles were delivered directly to the

1   contractors performing the work on their home.  *Hoekman*, 2015 WL 9591471 at *1.  The district

2   court nonetheless determined that the purchasers knew or should have known of the arbitration

3   agreement based on their comparison shopping and reliance on advertising and marketing

4   material that merely referenced the limited warranty for the shingles.  *Id.* at *3–4.  In this case,

5   plaintiff alleges he "relied on the existence and length of the express warranties in deciding

6   whether to purchase the Class Dishwashers."  (Doc. No. 1 at ¶ 129.)  If this is true, plaintiff would

7   have also seen the arbitration provision because it appears on the first page of defendant's

8   warranty.  (*See* Doc. No. 30-3 at 57.)

9        For all of these reasons, the court finds that plaintiff had notice of the arbitration

10   agreement.  Accordingly, defendant has satisfied its burden with respect to establishing mutual

11   consent under California law.

12            2.    The *McGill* Rule

13        Next, plaintiff argues that because the arbitration provision at issue here requires all

14   disputes to be resolved in arbitration on an individual basis, he is precluded from seeking public

15   injunctive relief in violation of the *McGill* rule.  (*See* Doc. No. 36 at 6–11.)  This argument is

16   flawed because it is based on a misconstruing of the language of the arbitration provision.

17        In *McGill*, the California Supreme Court held that "a provision in any contract . . . that

18   purports to waive, in all fora, the statutory right to seek public injunctive relief . . . is invalid and

19   unenforceable under California law." 2 Cal. 5th at 962.  The court found such waivers to be at

20   odds with California Civil Code § 3513 which provides that "a law established for a public reason

21   cannot be contravened by a private agreement."  Cal. Civ. Code § 3513.  The court in *McGill*

22   explained that California law

23            distinguishe[s] between private injunctive relief—*i.e.*, relief that
            primarily resolves a private dispute between the parties and rectifies

24            individual wrongs and that benefits the public, if at all, only
            incidentally—and public injunctive relief—*i.e.*, relief that by and

25            large benefits the general public and that benefits the plaintiff, if at
            all, only incidentally and/or as a member of the general public.

26

27   *Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 541 (9th Cir. 2021) (quoting *McGill*, 2

28   Cal. 5th at 955).  The California Supreme Court in *McGill* went on to say that "[b]y definition, the

17

public injunctive relief available under the UCL, the CLRA, and the false advertising law . . . is primarily 'for the benefit of the general public.'" *McGill*, 2 Cal. 5th at 961 (quoting *Broughton v. Cigna Healthplans of Cal.*, 21 Cal. 4th 1066, 1082 (1999)).  The arbitration provision at issue in *McGill* was accordingly found to be invalid and unenforceable because it waived the plaintiff's right to seek public injunctive relief *in any forum*.  *Id.* at 956, 961.[9]

Here, in contrast, plaintiff is not precluded from seeking public injunctive relief in any forum, so the *McGill* rule does not render the arbitration provision invalid.  Although the arbitration provision at issue here requires all disputes to be resolved in arbitration on an individual basis, it says nothing that would limit the relief available to a party in arbitration.  (*See* Doc. No. 30-3 at 57–60.)  Plaintiff rests his argument on procedural grounds (the requirement to individually arbitrate disputes) but fails to explain how an award of public injunctive relief would be precluded in arbitration.  (Doc. No. 36 at 8) ("The arbitration provision only allows an individual consumer to pursue his or her *own individual dispute*.") (emphasis in original).  Applicable here, the definition of the term "dispute" which includes "*any* dispute, claim or controversy *of any kind whatsoever* (whether based in contract, tort, *statute*, regulation, ordinance, fraud, misrepresentation *or any other legal or equitable theory*[,])" further clarifies that plaintiff would be free to seek the public injunctive relief he desires under the CLRA, UCL, and FAL.  (Doc. No. 30-3 at 59) (emphasis added); *see also DiCarlo v. MoneyLion, Inc.*, 988 F.3d 1148, 1156 (9th Cir. 2021) (relying on the decisions in *Blair* and *McGill* to find that an arbitration agreement's prohibition on acting as a private attorney general did not prevent the plaintiff from securing public injunctive relief in arbitration); *In re Tesla Advanced Driver Assistance Systems Litigation*, No. 22-cv-05240-HSG, 2023 WL 6391477, at *7 (N.D. Cal. Sept.

---

9   The Ninth Circuit has held that the FAA does not preempt the *McGill* rule.  *Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 830–31 (9th Cir. 2019).  In *Blair*, several of the plaintiff's claims were severed from the scope of arbitration pursuant to the holding in *McGill* because one paragraph in the arbitration agreement at issue provided that "arbitration shall be conducted on an individual basis, and that neither you nor [Rent-A-Center] may seek, nor may the Arbitrator award, relief that would affect [Rent-A-Center] account holders other than you."  *Id.* at 823, 831.  This paragraph directly contravened an award of public injunctive relief.  *Id.*  Additionally, because a different paragraph of the agreement allowed either party to compel all disputes to be resolved in arbitration, the plaintiff was prevented from seeking public injunctive relief in any forum.  *Id.*

1  30, 2023) ("The Ninth Circuit has since interpreted California case law to establish that if a

2  contract allows plaintiffs to seek public injunctive relief through arbitration, it does not violate the

3  *McGill* rule and is enforceable."); *Lira v. National Distribution Centers, LLC*, No. EDCV 21-672

4  JGB (KKx), 2023 WL 8053857, at *5-6 (C.D. Cal. Apr. 19, 2023).

5          Still, plaintiff insists that because the arbitration provision here provides that "[a]ny

6  dispute between you and LG shall not be combined or consolidated with a dispute involving any

7  other person's or entity's product or claim[,]" he cannot seek public injunctive relief.  (Doc. No.

8  36 at 8.)  Read in context, this language clearly goes to the procedure the parties will agree to

9  adopt as opposed to imposing limitations on their substantive rights—in fact, the language

10 appears under a section of the agreement titled "procedure for resolving disputes" and is

11 immediately followed by the specification that disputes should not proceed as part of a class or

12 representative action.  (Doc. No. 30-3 at 59.)  Moreover, in contrast to *Blair* and *McGill*, there is

13 no provision here that explicitly limits the relief available in arbitration.  *See McGill*, 2 Cal. 5th at

14 952 ("the arbitrator may award relief only on an individual (non-class, non-representative)

15 basis."); *Blair*, 928 F.3d at 823 ("nor may the Arbitrator award, relief that would affect [Rent-A-

16 Center] account holders other than you.").  In short, plaintiff's interpretation of the arbitration

17 provision in this case is unpersuasive.

18         To be sure, the arbitration provision here provides that arbitration will be "administered

19 by the American Arbitration Association ('AAA') and will be conducted before a single arbitrator

20 under the AAA's Consumer Arbitration Rules that are in effect at the time the arbitration is

21 initiated . . . and under the procedures set forth in this section."  (Doc. No. 30-3 at 59.)  This

22 language once again clarifies that the section "procedure for resolving disputes" is in fact

23 procedural.  Furthermore, as another California district court has recognized, the AAA Rules

24 "permit arbitrators to award any 'remedy' or 'relief' available to a litigant in court."  *Hill v. BBVA*

25 *USA*, No. 20-cv-1016 JLS (WVG), 2021 WL 2206477, at *4 (S.D. Cal. June 1, 2021) (citing

26 AAA, Consumer Arbitration Rules, Rule 44(a)).  Therefore, it appears clear to this court that

27 "[plaintiff] is free to seek public injunctive relief in individual arbitration."  (Doc. No. 37 at 9.)

28 /////

1    For all of these reasons, application of the *McGill* rule does not invalidate the arbitration

2    provision here.[10]

3            3.    Unconscionability

4    Finally, plaintiff argues that the arbitration provision in this case is both procedurally and

5    substantively unconscionable.  (Doc. No. 36 at 10–11.)  Plaintiff asserts that the arbitration

6    provision is procedurally unconscionable because it was presented to him as a contract of

7    adhesion on a take-it-or-leave-it basis by a party of superior bargaining power.  (*Id.*)  As to

8    substantive unconscionability, plaintiff contends there is a lack of mutuality based on the

9    requirement that only consumers must provide a 30-day notice prior to commencing arbitration

10   proceedings.  (*Id.* at 11.)  Defendant rebuts both of these arguments, asserting that there is no

11   procedural unconscionability due to plaintiff having the opportunity to opt out of arbitration, and

12   there is no substantive unconscionability based on the fact that the arbitration provision subjects

13   both parties to the arbitral forum.  (Doc. No. 37 at 10–12.)  The court finds defendant's arguments

14   in this regard to be persuasive and as discussed more fully below, concludes that plaintiff has

15   failed to meet his burden of establishing unconscionability.

16   "Under California law, 'the party opposing arbitration bears the burden of proving any

17   defense, such as unconscionability.'"  *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1013 (9th Cir.

18   2023) (quoting *Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223,

19   236 (2012)).  A finding that a contract or clause was unconscionable at the time it was made

20   allows the court to refuse to enforce the contract, enforce the remainder of the contract without

21   the unconscionable clause, or limit the application of any unconscionable clause to avoid any

22   unconscionable result.  Cal. Civ. Code § 1670.5(a).  Unconscionability has both procedural and

23   substantive elements, "the former focusing on oppression or surprise due to unequal bargaining

24   power, the latter on overly harsh or one-sided results."  *AT&T Mobility LLC v. Concepcion*, 563

25   U.S. 333, 340 (2011) (quoting *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th

26

27   [10]  Because the court finds the arbitration agreement to be valid, the court need not address the
     parties' respective arguments with regard to what effect a finding of invalidity would have on the
28   entirety of the arbitration agreement.

83, 114 (2000)) (internal quotation marks omitted).  These elements must both be shown to establish the unconscionability defense, but they need not be present in the same degree—they are weighed on a sliding scale, which allows a lesser finding of procedural unconscionability when there is significant substantive unconscionability present, and vice versa.  *Armendariz*, 24 Cal. 4th at 114.

A procedural unconscionability analysis first considers whether the contract is one of adhesion.  *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 126 (2019).  Contracts of adhesion are "standardized[,] . . . imposed and drafted by the party of superior bargaining strength, relegat[ing] to the subscribing party only the opportunity to adhere to the contract or reject it."  *Armendariz*, 24 Cal. 4th at 113.  A procedural unconscionability analysis also asks whether there was oppression or surprise during formation such that closer scrutiny of a contract's fairness is required.  *OTO, L.L.C.*, 8 Cal. 5th at 126.  "Oppression occurs where a contract involves lack of negotiation and meaningful choice, surprise where the allegedly unconscionable provision is hidden within a prolix printed form."  *Pinnacle Museum*, 55 Cal. 4th at 247 (citations and internal quotation marks omitted).

"Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided."  *Id.* at 246 (citing *Armendariz*, 24 Cal. 4th at 114).  "A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be so one-sided as to shock the conscience."  *Id.* (citations and internal quotation marks omitted).

Procedurally, the arbitration provision here is not unconscionable because it provides consumers an opportunity to opt out of arbitration without any impact on their warranty coverage.  (*See* Doc. No. 30-3 at 60.)  Thus, it is unlike a classic take-it-or-leave-it contract of adhesion.  *See, e.g.*, *Armendariz*, 24 Cal. 4th at 114–15 (finding that an arbitration agreement imposed as a condition of employment was adhesive).  As for surprise, plaintiff does not advance any argument that there was surprise in the formation of the contract.  With respect to oppression, plaintiff argues "[t]he arbitration provision is oppressive because of LG's far superior bargaining power."  (Doc. No. 36 at 10–11.)  In light of the opt out procedures available to consumers, it does not

follow that oppression exists simply by virtue of the imbalance in bargaining power between the parties.  In fact, consumers here do have a meaningful choice—they are free to opt out of arbitration within thirty days of their purchase while retaining their dishwashers and the full benefits of defendant's limited warranty.  *See Carter v. Rent-A-Ctr., Inc.*, 718 F. App'x 502, 505 (9th Cir. 2017)[11] (finding a procedural unconscionability argument "unavailing" where there was an opportunity to opt out of arbitration); *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1059 (9th Cir. 2013) (concluding that the arbitration provision in question was not procedurally unconscionable because it allowed students obtaining loans to reject arbitration within sixty days of signing the promissory note); *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199–1200 (9th Cir. 2002) ("[T]his case lacks the necessary element of procedural unconscionability.  Ahmed was not presented with a contract of adhesion because he was given the opportunity to opt-out of the Circuit City arbitration program by mailing in a simple one-page form [within thirty days].").  In sum, plaintiff has failed to demonstrate procedural unconscionability.

Substantively, the arbitration provision here is not unconscionable because it does not present overly harsh or one-sided results.  As the decisions cited above make clear, substantive unconscionability exists where one party subjects the other to the arbitral forum while reserving for itself the ability to pursue claims in state or federal court.  *See, e.g.*, *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1285–86 (9th Cir. 2006).  By contrast, the arbitration provision here subjects both parties to arbitration.  (*See* Doc. No. 30-3 at 59) ("[Y]ou and LG agree to resolve any claims between us only by binding arbitration on an individual basis[.]").  Moreover, "parties are free to contract for asymmetrical remedies and arbitration clauses of varying scope."  *Armendariz*, 24 Cal. 4th at 118.  Thus, it does not shock the conscience, nor is it substantively unconscionable that the arbitration provision here requires only consumers to provide a 30-day notice prior to commencing arbitration proceedings.

/////

/////

---

[11]  Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

1   In conclusion, the court concludes that plaintiff has failed to meet his burden of

2   demonstrating unconscionability.  The arbitration provision is therefore valid and enforceable.

3   The court will next consider whether the dispute giving rise to this action is encompassed by the

4   arbitration provision.

5          **C.**       **Applicability of the Arbitration Agreement to the Present Dispute**

6   Plaintiff does not contest that the arbitration provision encompasses the claims he has

7   brought in this action.  (*See* Doc. No. 36.)  Indeed, it is clear that the broad scope of disputes

8   covered by the terms of the arbitration provision do in fact encompass all of plaintiff's claims.

9   "In determining if a dispute falls within the scope of an arbitration clause, we examine the

10  factual allegations raised in the complaint."  *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1101

11  (9th Cir. 2023) (citing *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999)).  "To

12  require arbitration, [the plaintiff's] factual allegations need only 'touch matters' covered by the

13  contract containing the arbitration clause and all doubts are to be resolved in favor of

14  arbitrability."  *Simula, Inc.*, 175 F.3d at 719 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-*

15  *Plymouth, Inc.*, 473 U.S. 614, 624 n.13 (1985)).

16  In this case, in addition to requiring that the parties submit disputes between them to

17  binding arbitration, the arbitration provision broadly defines the term "dispute" to include "any

18  dispute, claim or controversy of any kind whatsoever . . . arising out of or relating in any way to

19  the sale, condition or performance of the product or this Limited Warranty."  (Doc. No. 30-3 at

20  59.)  A review of each of plaintiff's claims plainly indicates that they "touch matters" covered by

21  the arbitration provision.  Plaintiff brings in this action claims based either on defendant's

22  warranty itself or on the alleged defect in the dishwasher, the product covered by the arbitration

23  provision.  (*See generally* Doc. No. 1.)  Thus, the entirety of plaintiff's complaint is encompassed

24  by the arbitration provision.

25  Accordingly, defendant's motion to compel arbitration (Doc. No. 30) will be granted.

26  Moreover, because the arbitration provision is valid and because all of plaintiff's claims are

27  subject to arbitration, the court will also dismiss this action without prejudice.  *See Forrest v.*

28  *Spizzirri*, 62 F.4th 1201, 1203 (9th Cir. 2023) ("Although the plain text of the FAA appears to

23

1    mandate a stay pending arbitration upon application of a party, binding precedent establishes that

2    district courts may dismiss suits when, as here, all claims are subject to arbitration."), *pet. for*

3    *cert. docketed* (June 16, 2023); *see also Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072,

4    1074 (9th Cir. 2014).

5           Finally, defendant's pending motion to transfer venue, or in the alternative, motion to

6    dismiss (Doc. No. 18) will be denied as having been rendered moot by this order.

7                                              **CONCLUSION**

8           For the reasons explained above:

9       1.      Defendant's request for judicial notice (Doc. No. 19) is granted;

10      2.      Defendant's motion to compel arbitration (Doc. No. 30) is granted;

11      3.      Defendant's motion to transfer venue, or in the alternative, motion to dismiss

12              (Doc. No. 18) is denied as having been rendered moot by this order;

13      4.      This action is dismissed without prejudice; and

14      5.      The Clerk of the Court is directed to close this case.

15   IT IS SO ORDERED.

16     Dated:   __**January 3, 2024**__              _____

17                                                   UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28